UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| XTRIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:09-CV-2228-G |
| INTERNATIONAL INSURANCE | ) | |
| ALLIANCE, INC., | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are the emergency motion of the plaintiff Xtria LLC ("Xtria" or "the plaintiff") to remand this case to the state court from which it was removed (docket entry 3) and the plaintiff's emergency motion to extend the amended temporary restraining order (docket entry 6).  For the reasons discussed below, the motion to remand is denied, and the motion to extend the amended temporary restraining order is granted.

I.  <u>BACKGROUND</u>

This is the third lawsuit whose origins trace back to a June 2000 asset-purchase agreement between Xtria and Tracking Systems, Inc. ("TSI").  The asset-purchase

agreement set the terms of the sale to Xtria of a product called "eLiens."  Notice of
Removal ("Notice"), Exhibit A, Index of State Court Filed Documents ("Exhibit A"),
Document 2, Plaintiff's Verified Original Petition ("Petition") at 5.  One of those
terms was an "earn-out" provision that provided that if Xtria ever sold the eLiens
business, TSI was entitled to 20% of Xtria's profit on the sale.  *Id.*  In about June
2004, Xtria signed a sales-representative agreement with International Insurance
Alliance, Inc. ("IIAI" or "the defendant") under which IIAI agreed to market the
eLiens product for Xtria.  *Id.*  In August 2005, Xtria sold the rights to the eLiens
product to a different company, triggering Xtria's obligation to pay TSI a portion of
its profits.  *Id.*  The sale touched off a dispute over how much money Xtria owed TSI
pursuant to the terms of the earn-out provision.  *Id.*

TSI and Xtria mediated their dispute in July 2006.  *Id.*  The mediation resulted
in a settlement agreement and release ("the July 2006 release") under which Xtria
agreed to pay TSI a settlement of $555,000.  *Id.* at 6.  By its terms, the July 2006
release was binding on TSI and "its past, present and future affiliates and their
predecessors and successors . . . and any companies, affiliates, corporations, entities,
or associations that it does or may hereafter own, control, operate, manage or direct."
*Id.*  TSI agreed to release any claims it might have had against Xtria related to the
asset-purchase agreement and to "any oral or other written agreement between TSI
and Xtria."  *Id.*

- 2 -

A second alternative-dispute-resolution proceeding began in December 2006 when IIAI filed an arbitration demand against Xtria. *Id.* IIAI's arbitration claim sought damages from Xtria relating to the June 2004 sales-representative agreement. Xtria contended in the arbitration that IIAI's claim had been extinguished by the July 2006 release because IIAI was an affiliate of TSI, but the arbitrator rejected Xtria's contention. *Id.* at 6-7. IIAI eventually obtained an arbitration award against Xtria in January 2008 in the amount of $1,350,000. *Id.* at 7.

In January 2007, while the arbitration was still pending, Xtria filed the first of three lawsuits ("the first federal-court lawsuit"). *Id.* at 8. Xtria brought suit against TSI in this court (case number 3:07-CV-0160-D) seeking damages for breach of the July 2006 release arising from the filing of IIAI's arbitration claim. *Id.* In August 2008, Chief Judge Fitzwater concluded that, as a matter of law, IIAI was an affiliate of TSI within the meaning of the July 2006 release and granted Xtria's motion for summary judgment on that issue. Petition at 8; *see also* Petition, Exhibit 2. In October 2008, Chief Judge Fitzwater dismissed the breach of contract claim following a bench trial in which he found that Xtria had not proved that TSI had breached the July 2006 release by failing to prevent IIAI from initiating the December 2007 arbitration proceeding. Petition at 9; see also *Xtria LLC v. Tracking Systems, Inc.*, 2008 WL 4692855 (N.D. Tex. Oct. 23, 2008). The Chief Judge concluded that the July 2006 release was ambiguous and could be read as doing no more than providing Xtria

with a defense in the event TSI or one of its affiliates brought suit against Xtria.

Petition at 9; *see also Xtria LLC*, 2008 WL 4692855, at *2-*3.  On October 27,

2009, the Fifth Circuit reversed the judgment dismissing Xtria's breach of contract

claim on the ground that the July 2006 release constituted an unambiguous promise

by TSI that its affiliates would not sue Xtria.  Petition at 9; *see also* Petition, Exhibit

3; *Xtria LLC v. Tracking Systems, Inc.*, 2009 WL 3150326 (5th Cir. Oct. 1, 2009).

The case was remanded for further proceedings on the issues of breach of contract

and damages, and it remains pending before Chief Judge Fitzwater.  Petition at 9-10.

Meanwhile, Xtria filed a second lawsuit in January 2008, this time in the 14th

Judicial District Court in Dallas, Texas ("the first state-court lawsuit").  Petition at 7.

Xtria sought to vacate the January 2008 arbitration award, and IIAI filed a motion to

confirm the award.  *Id.*  In March 2008 the state court granted IIAI's motion to

confirm the award and entered judgment in the amount of $1,350.000.  *Id.*  Xtria

filed a supersedeas bond with the district clerk of Dallas County, Texas, to stay

execution on the judgment and timely took an appeal.  *Id.*  On May 15, 2009, the

Sixth Court of Appeals of Texas affirmed the judgment against Xtria.  *Id.*  The

Supreme Court of Texas denied Xtria's petition for discretionary review, and the

state-court judgment became final on Nov. 13, 2009.  *Id.* at 9-10.  IIAI now seeks to

execute on Xtria's supersedeas bond.  *Id.* at 10.

Xtria's third lawsuit is the instant one, which was filed on Nov. 16, 2009, in the 191st Judicial District of Dallas County, Texas.  Notice at 1.  Xtria seeks a declaratory judgment allowing it to equitably offset the $1,350,000 state-court judgment in favor of IIAI against whatever judgment it might obtain against TSI in the federal-court action currently pending before Chief Judge Fitzwater.  Petition at 12.  Xtria also seeks temporary and permanent injunctive relief preventing IIAI from enforcing the judgment in the first state-court lawsuit.  *Id.*  On the same day that Xtria filed this suit, the state court granted Xtria's motion for a temporary restraining order that prevents IIAI from enforcing the March 2008 state-court judgment by executing on the supersedeas bond.  Notice, Exhibit A, Document 4, Temporary Restraining Order.  By November 20, 2009, the state court had also entered orders requiring expedited discovery and extending the TRO until December 14, 2009.  Emergency Motion to Remand and Brief in Support ("Motion to Remand") at 3.

Removal to this court was effected on November 23, 2009.  Notice at 3.  IIAI filed for removal on the ground that this court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332.  Notice at 2.  Xtria does not dispute that the parties are of completely diverse citizenship and that the amount in controversy exceeds $75,000.  Motion to Remand at 4.  Rather, Xtria argues that this case is ancillary to a previous state-court proceeding and thus is non-removable under *Barrow v. Hunton*, 99 U.S. 80 (1879).  Motion to Remand at 4-5.  Alternatively, Xtria argues, IIAI waived its right

to remove the case by contesting Xtria's motion for a temporary restraining order in the state court.  Motion to Remand at 6-7.

## II. ANALYSIS

### A. Motion to Remand

Title 28 U.S.C. § 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  The statute allows a defendant to "remove a state court action to federal court only if the action could have originally been filed in federal court." *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir. 1993).  However, the removal statute must be strictly construed because "removal jurisdiction raises significant federalism concerns."  *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir. 1988); see also *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). Therefore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court."  *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941).  As the party seeking removal, the defendant bears the burden of establishing federal jurisdiction. *Willy*, 855 F.2d at 1164.

1.  *Supplementary Proceeding*

Xtria first contends that this lawsuit is nonremovable under the doctrine of *Barrow v. Hunton*.  *Barrow* holds that "a federal court cannot acquire removal jurisdiction over a state court action that seeks to set aside a prior state court judgment when the second suit 'is a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuance of it.'" *Beighly v. Federal Deposit Insurance Corporation*, 868 F.2d 776, 781 (5th Cir. 1989) (quoting *Barrow*, 99 U.S. at 82), *superseded by statute on other grounds*, 12 U.S.C. § 1823(e).  The *Barrow* rule applies "when an action in federal court seeks to nullify or to enforce the judgment of a prior state court suit."  *Id.* (emphasis omitted).  As the Court explained in *Barrow*, if the later action "is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, . . . or to a bill of review or an appeal," it is a non-removable supplementary proceeding.  99 U.S. at 83. By contrast, if the later action involves "the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or [the investigation] of the party's right to claim any benefit by reason thereof," the action is "an original and independent proceeding" over which a federal court may exercise jurisdiction.  *Id.*

Xtria cites three cases in support of its position on this point, and those cases suggest that the hallmark of a lawsuit that is non-removable under *Barrow* is an attack

on the validity or enforceability of a judgment entered in a previous state-court case. In *Barrow* itself, the defendant had recovered a $2,500 state-court judgment against the plaintiff, and the plaintiff had filed a second state-court lawsuit seeking to nullify that judgment on the ground that he had not been served with process and that he had been discharged as a bankrupt.  99 U.S. at 80.   In *McMillin v. Breen*, 2007 U.S. Dist. Lexis 27688 (E.D. La. April 5, 2007), McMillin took a default judgment against Breen in state court, and then he filed a second lawsuit seeking to make the default judgment executory.  *Id.* at *1.  Breen's removal of the second lawsuit to federal court was improper because his defense in the second lawsuit was that his due-process rights had been violated in the first lawsuit.  *Id.* at *5.  Finally, Xtria correctly notes that "[t]he validity of the judgment in the first suit was not under attack" in *Ledgedale of Pennsylvania, Inc. v. Carroll*, 478 F. Supp. 711 (D. Pa. 1979), Reply at 3, but *Ledgedale* involved three separate proceedings.  In the first, a mortgagee foreclosed on a mortgage.  478 F. Supp. at 711.  In the second, the mortgagee filed a praecipe (a common-law writ seeking court action) for a writ of execution, obtained the writ of execution, and, pursuant to that writ, had a sheriff conduct a foreclosure sale.  *Id.* at 711-12.  The third was a suit filed by the mortgagor that sought to set aside the sheriff's sale as procedurally invalid.  *Id.* at 712-13.  The court held that *Barrow*

- 8 -

blocked removal of the third suit because it was not an independent controversy from the second one. *Id.* at 713.[1]

These cases demonstrate that the present proceeding is not supplementary to the first state-court lawsuit within the meaning of *Barrow*. Xtria does not contest the validity of the judgment from the first state-court lawsuit. Instead, Xtria anticipates taking a valid judgment of its own against TSI and argues that its judgment against TSI and IIAI's judgment against it should be equitably offset against one another. Any request to equitably offset one debt against another is, by definition, predicated on the existence of two valid debts. See, *e.g.*, *Moosavideen v. Garrett*, __ S.W.3d __, 2008 WL 4965165, at *9 (Tex. App.--Houston [1st Dist.] Nov. 20, 2008, pet. denied) (holding that reversal of a judgment in favor of the appellees necessitated reversal of an equitable offset in favor of the appellant). Put differently, Xtria concedes that the judgment from the first state-court lawsuit is enforceable. The relief it seeks here is for the court to require that valid judgment to be enforced against Xtria only in one particular way -- namely, by being equitably offset against whatever judgment it can obtain against TSI. Because Xtria does not dispute the

---

[1] The results and reasoning in the cases cited by the plaintiff appear to represent the consensus view on this issue. See, *e.g.*, *MacKay v. Pfeil*, 827 F.2d 540 (9th Cir. 1987); *Taylor v. Taylor*, 2001 WL 1491026, at *1 (E.D. La. Nov. 21. 2001). Cf. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("*Rooker-Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment.").

validity of the judgment obtained by IIAI in the first state-court lawsuit, the court finds that the *Barrow* rule does not prevent removal of this case.

## 2. *Waiver*

Xtria next argues that IIAI waived its right to remove this case by contesting the TRO in state court.  It is true that a defendant can waive its right to remove by taking actions in the state court that manifest an intention to litigate the merits of the claim, but a "waiver of the right to remove must be clear and unequivocal; the right to removal is not lost by participating in state court proceedings short of seeking an adjudication on the merits." *Tedford v. Warner-Lambert Company*, 327 F.3d 423, 428 (5th Cir. 2003).  The only conduct on which Xtria relies to establish waiver is IIAI's "appearances and defense against [the plaintiff's] motion for a temporary restraining order and temporary injunction [in state court].  But defending against such motions does not of itself constitute a waiver of the right to remove." *Titan Aviation, LLC v. Key Equipment Finance, Inc.*, 2006 WL 3040923, at *4 (N.D. Tex. Oct. 26, 2006) (Fitzwater, J.) (citations omitted).  Therefore, the court finds that IIAI did not waive its right to remove this case.

In sum, this case is not supplementary to a prior state-court proceeding, and IIAI did not waive its right to removal.  As a result, the court finds that Xtria's motion to remand should be denied.

B.  Motion to Extend Temporary Restraining Order

The plaintiff asks this court to extend the TRO so that it will have time to file a motion for a preliminary injunction.  Emergency Motion to Extend Amended Temporary Restraining Order and Brief In Support Thereof ("Motion to Extend TRO") at 3.  The TRO was originally entered by the state court, but a case that has been removed proceeds as if it originally had been brought in federal court and "everything done in state court had in fact been done in the federal court."  *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988) (quotation marks and citation omitted); see also 28 U.S.C. § 1450 ("Whenever any action is removed from a State court to a district court of the United States, . . . [a]ll injunctions, orders, and other proceedings had in such action shall remain in full force and effect until dissolved or modified by the district court.").  Federal Rule of Civil Procedure 65(b)(2) allows a court to extend a temporary restraining order for a period of 14 days if good cause is shown.[2]

"The prerequisites for preliminary injunctive relief are long-established in this circuit:"  (1) a substantial likelihood that the plaintiff will prevail on the merits; (2) a

---

[2]     See also *Almetals, Inc. V. Wickeder Westfalenstahl, GMBH*, 2008 WL 624067, at *2 (E.D. Mich. Mar. 06, 2008) (noting that a temporary restraining order may be extended beyond the time limit set in Rule 65(b) "'if the moving party has exercised good faith in seeking the preliminary injunction hearing, but has been unsuccessful, and if the danger of irreparable injury continues.'") (quoting *Maine v. Fri*, 482 F.2d 439, 441 n.1 (1st Cir. 1973), in turn citing 11 CHARLES  ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2953 (1973)).

substantial threat that the plaintiff will suffer irreparable injury; (3) the threatened injury to plaintiff outweighs any threatened harm to the defendant; and (4) granting injunctive relief will not disserve the public interest.  *Libertarian Party of Texas v. Fainter*, 741 F. 2d 728, 729 (5th Cir. 1984).  The party seeking preliminary injunctive must clearly carry the burden of persuasion on all four requirements. *Bluefield Water Association, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009).

The sole issue argued by the parties is whether Xtria is substantially likely to prevail on the merits.  However, before this case was removed, the state court had already concluded that Xtria was substantially likely to prevail on the merits.  Notice, Exhibit A, Document 4, Temporary Restraining Order; Notice, Exhibit A, Document 13, Amended Temporary Restraining Order.  Although pre-removal state-court rulings cannot set the law of the case in federal court, they are entitled to some deference during post-removal proceedings.  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 n.11 (5th Cir. 2002); see also, *e.g.*, *American Systems Consulting, Inc. v. Devier*, 514 F. Supp. 2d 1001, 1010 (S.D. Ohio 2007) ("[T]his Court . . . credits for present purposes the state court's finding that Plaintiff will suffer irreparable harm in the absence of a temporary restraining order.").  The question before this court is not whether the TRO originally should have issued.  Rather, this court must decide whether there is good cause for the TRO's extension.

The court finds that good cause exists to extend the temporary restraining order issued by the state court.  Prior to removal, the state court granted Xtria's motion for expedited discovery.  Notice, Exhibit A, Document 5, Order for Expedited Discovery.  Removal of this case from state court resulted in discovery not taking place on the schedule established by the state court.  Supplement to Plaintiff's Emergency Motion to Extend Amended Temporary Restraining Order and Brief in Support Thereof, at 1-3.  Discovery delays have prevented Xtria from filing its motion for a preliminary injunction before the expiration of the state court's amended temporary restraining order.  Reply in Support of Plaintiff's Emergency Motion to Extend Amended Temporary Restraining Order at 2-3.  These circumstances constitute good cause for extension of the TRO.  See *Devier*, 514 F. Supp. 2d at 1010 ("It would be inequitable for Plaintiff to lose a lawfully obtained injunction issued by the state court simply based on the circumstances of scheduling issues. The injunction should continue or not based on its merits, not as a result of strategy.").

Under Federal Rule of Civil Procedure 65(c), a party moving for a temporary restraining order is required to give "security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained."  Xtria has posted a supersedeas bond, the amount of which includes daily accruing interest through November 2010.  Petition at 7-8.  The court finds that the supersedeas bond is adequate security under Rule 65(c).

### III.  CONCLUSION

For the reasons discussed above, the motion to remand is **DENIED**, and the motion to extend the temporary restraining order is **GRANTED**.  The temporary restraining order is **EXTENDED** until **Monday, January 18, 2010**.  The plaintiff shall file its motion for preliminary injunction no later than **Tuesday, December 22, 2009**.  The defendant shall files its response no later than **Tuesday, January 5, 2010**.  The plaintiff shall file its reply, if any, no later than **Friday, January 8, 2010**.

**SO ORDERED**.

December 11, 2009.

_____
**A. JOE FISH**
**Senior United States District Judge**

- 14 -